I think this gets low enough for me. Can you hear me? Yes. Okay. May it please the court, my name is Michelle Yao representing the US Department of Labor. I'd like to reserve five minutes for rebuttal. Granted. Thank you. As a preliminary matter, I'd like to spend just a few minutes addressing the summit decision because Trinity has filed that decision with this court arguing that summit is relevant authority for one of the issues in this case. Trinity hasn't really sent a letter explaining why it's relevant that I've seen. They submitted the opinion. Yes. As a just a quick preliminary matter, the Secretary's opinion is that it's not relevant because it speaks to a completely different issue than the one that we have here. The issue here is whether the Secretary has authority under the OSHA Act to impose hazard communication duties on building owners that extend beyond the building owners direct employees. And as explained in our brief, the answer to that question is yes. And nothing in the summit decision undermines our position. Only if you'd be interested I could get into the, you know, holding of summit. But really summit decided a very narrow issue that has no bearing on this case. So if that's... Is there a concern here? I know that the scope of whether the Act can be applied to this particular Trinity. I know that there's been some talk about this about the multi-employer. Isn't that kind of a red herring in terms of the multi-employer aspect? I think a serious issue is does the Act apply to, say, Trinity? Yeah. You know, I know there's been... Thank you. There's been some... The Secretary even has questioned whether that has happened in the past, whether that's possible in the past. And it's not really directly briefed by the parties here. But, you know, should... Why should the OSHA... I always call it OSHA. I don't know. I was a little surprised to see OSHA act. But in any event, why does it apply to this particular party? You mean to the issue here? Yes. Or the summit? The Trinity. I think more, perhaps more specifically, does the Secretary have jurisdiction over building and facility owners? Is that... Yes, that is the issue in this case. But it hasn't been briefed by either side. There's an allusion in a footnote and the ALJ doesn't believe there is jurisdiction. That's in a footnote as well. But other than that, there's really not been briefing on that part. Okay. I believe that we actually have a footnote in, I think, our response brief. You do. You mentioned it. But basically, this VESTA standard does hold building owners accountable with... for certain hazard communication duties. But isn't the hook, though, employer? Yes, but in the preamble, we make clear that we are only... we only meet building owners who are statutory employers under the act. And in this case, that's the very first stipulation. It's kind of arbitrary, isn't it? No, you can have, obviously, building owners who are not employers. Yeah, absolutely. Right? So whether or not a building owner is covered just is a matter of happenstance, right? A building owner could be an employer of a secretary, you know, in a different building and would be covered in this other building, right? What's the rationale for that? Well, I think we are somewhat capped by the OSH Act itself and it only applies to statutory employers. And there's case law that has found that an employer means any employer that has at least one employee. And so, to the extent that a building owner doesn't have any employees, then it's somewhat logical that it wouldn't have obligations under the OSH Act to create safe places of employment if it doesn't have any employees. But in this case, it's clear that the secretary has jurisdiction over building owners as long as they are statutory employers under the Act, which means... I don't know if it's clear, but that is a question. I agree. And the ALJ, in his opinion, in the last footnote, describes the language statutory employers as having been in the initial rule but not in the final rule. And that the secretary offered no explanation for dropping the word statutory in the final rule. That's A-20. I mean, I do believe that I looked at this issue in terms of the right text makes clear that building owners means only statutory employers. But as just sort of a practical matter, the regulations at issue would only apply within the scope of the secretary's jurisdiction. Well, you can tell we're a little worried about the expense. I mean, if I have Trinity come over to my house and go work on my boiler, I mean, and they find asbestos, am I going to get a citation from the secretary? Absolutely not. I mean, suppose I employ an au pair at my house. Now I'm an employer. Now can I, now am I subject to a citation by the secretary? If you were found to be a statutory employer... Well, if I'm employing one person. Then... And then we'll be in foreign commerce at that. Well, I mean, the interesting question is whether you would then be, I mean, whether you'd be required under 5A-2 to comply with all OSHA standards. I mean, if I understand your question correctly, I think that it is clear in this case that Trinity is an employee by stipulation, in fact. And that the asbestos standard only applies, or the asbestos requirements on building owners only applies to statutory employers. Well, the K-2 provision under which the violations were found here, Rule 1 and Rule 2, didn't use the word employer. It used the words, those sections describe the duties of a building or facility owner. Yes. And when you get to Number 3, that's when you get into employer. Yes. But the violations were here only on the section that applies to building and facility owners. And that's why I've had difficulty from Day 1 in this case, understanding why everyone seems to treat the word employer and building owner as fungible. Because they've been separated in the regulations themselves. Yeah, and as an add-on to what Judge Barry said, you know, you started off with pointing out in Stipulation 1 says that they're an employer under OSHA. What's the significance of that under the sections that they've been cited under? You said they're an employer. Does that have real significance here? Yeah, because only a statutory employer can be cited under the Act. So if there is a building owner, I think that's really the question. Is a building owner, by definition, a statutory employer? Oh, I don't believe that this, the Asbestos Standard, contemplates that any building owner is a statutory employer. I think that's a separate question. That's a question that really hasn't been briefed at all. In this case. In this case, I believe it wasn't briefed because... Because we raised it here, actually. I'd be happy, if you feel like we haven't adequately addressed it, I'd be happy to have the Secretary, or the Secretary would be happy to file a supplemental briefing on the issue. But I think the reason why we didn't see it as an issue here was, by stipulation, Trinity was a statutory employer, therefore subject to the obligations of the Act. Trinity is also a building owner, and therefore was... that there is no jurisdiction over it. But if we're dealing with jurisdiction, its waiver of that argument does not relieve us of our responsibility to see if we have jurisdiction to consider this case. I think I'm starting to understand where you're going at, or getting at with this question. And I believe the heart of the question is really the Secretary's authority to hold employers generally responsible for hazards that affect employees other than its own. No, that's not at all the question. The question you're presenting is whether it's specifically building owners. A building owner can be an employer. Assuming that the building owner is an employer. One of the cases that Trinity cites in its brief is the Darden case, Nationwide Insurance v. Darden, which contains an interpretation of employer under ERISA, and the definition of employer under ERISA is almost identical to employer under OSHA. And you don't respond to that case at all in your reply brief. You don't think Darden is relevant at all to this issue? No, I do not believe that Darden is relevant to the issue in this case. That is not to say that Darden doesn't have any effect on cases arising under the OSHA Act. I think that Darden would speak to the question of whether a company was an employer at all, because if it wasn't, then it would not be covered by the Act. Similarly, it would answer a question of whether an employee is an employee of any company or an independent contractor, because if it's an independent contractor, it would not be covered under the Act. But the issue before you today, by stipulation, Trinity is an employer, and Fibrico, the subcontractor, had employees, and the question is whether Trinity, as a building owner and as an employer that's covered by the Act, whether the Secretary has the authority to impose hazard communication duties on Trinity that extend to Fibrico's employees. Well, why wouldn't the Secretary be able to impose duties on Trinity under subsection 3 of K, where it deals with duties of employers, as opposed to imposing the violation under section 2, which dealt with building owners and facility owners? The reason that the Secretary chose to put the testing obligation on building owners was because they opened the rulemaking record specifically asking for comment on how best to identify asbestos. And the overwhelming evidence said that 75% of buildings constructed pre-1981 have asbestos. And by and large, when people figured out how toxic asbestos is, they stopped using it. So, building owners are, and this is directly from actually the right text, I think, of section K, building owners are often in the best and only, you know, best and only source of information regarding... Well, your red light is on. We'll get you back on rebuttal to argue what you really wanted to argue in the first place. Okay. Thank you very much. Coincidentally, I don't employ a law pair. I'm on a judicial salary, so... May it please the Court, I'm Bob Rader from Dallas on behalf of Trinity. I might explain our view of the questions that the Court has raised regarding the building owner and the employer issue. We stipulated that Trinity was an employer subject to the Act because Trinity does have employees and is engaged in a business affecting interstate commerce. We were aware of the provision in the standard that relates to building owners, and it seemed to us that the simplest way to deal with that was simply to say that we were being cited for exposure of employees who were not our employees. And hence the reference to the Darden case. We think that the summit decision is relevant here because the summit decision held that the Secretary has promulgated a regulation at 29 CFR 1910.12a that limits her ability to cite only employers of affected employees. But that's not a case under OSHA, is it? Oh, yes, it is. There's no OSHA case? It's a case by the OSHA review commission that was handed down April 27th. So, in a way, we thought that the issue of building owner versus employer was subsumed in the argument we made that we were being cited for employees who were not our employees. The summit case is quite different, in my view, in any event. The regulations they were dealing with in summit were not specific. Here we have very specific regulations, and the commission was dealing with a multi-employer worksite doctrine. We don't really have that operating here. And also, they were using the summit case as a vehicle with which to chastise the Secretary for a flip-flop of positions over the years on the multi-employer worksite doctrine. I see it for those three reasons as very different from the case we have here. Why don't we get to this case and tell us why these violations were not serious. I think the first reason they're not serious is because the Secretary totally failed to prove exposure. To prove a serious violation, the Secretary must prove that there was some degree of exposure that created the substantial probability or likelihood of serious injury. Now, the Secretary says exposure is not necessary, and that is the Secretary's interpretation, which should be accorded some deference, although the Secretary doesn't argue that. Your Honor, the statute is very clear, and the case law is very clear, including the case in Bethlehem steeled by this court. The Secretary has the burden of proving some exposure. Those cases, Bethlehem and Duquesne, the cases you cite, were all overexposure cases, and this is not that. This is the warning and communication part of the asbestos record. And that's the Secretary's tactic. Since there is no evidence of exposure, the Secretary has said, really, the serious violation here is the lack of information. The failure to do testing doesn't give us the information we need, and that is a per se serious violation. Did you say there was no evidence of exposure in this case? Your Honor, the only evidence in the stipulation of facts is that they found asbestos, but there's no evidence whether the exposure was five minutes, ten minutes, to whom there was exposure, what the degree of airborne asbestos was, what the size of the fibers were. There's none of that evidence. Well, more to the point, there was exposure, wasn't there? I know there's nothing in the record that's five, ten, fifteen minutes worth, but there had to have been some exposure, right? Well, we presume that's the case, Your Honor, because they found the asbestos in the dumpster. So there was exposure. The question is the extent of the exposure. That's correct, Your Honor. The Secretary has the burden of proving that the exposure was significant enough that there was a substantial exposure. But the violation here was not one of exposure. The violation was failure to do testing and then to communicate. So the violation, the failure of the testing, the test we have to apply here under the case law as I see it, when the violation of a regulation makes the occurrence of an accident with a substantial probability of death or serious physical harm possible, the employer has committed a serious violation. It doesn't mean that the accident had to have occurred. That's exactly right, Your Honor. But there still has to be more proof of exposure than we have here. It's not enough to say that the testing by itself is designed to prevent a serious accident or injury. There has to be evidence that there would, in fact, be enough exposure to cause a serious injury or death. Doesn't your argument almost amount to an argument that a violation of these particular statutes, namely the failure to communicate, can never be a serious violation? Standing alone? I think that's right, Your Honor. Yes, I think there has to be, with that, there has to be some evidence that the exposure is significant enough to cause a serious injury. And this violation is not really an exposure violation. It's a failure to warn and a failure to communicate. And so you're saying, almost as a matter of law, this can't ever be a serious violation. I don't know if that makes sense. Your Honor, you need to remember that what you're talking about, as far as the testing, is a regulation. What we're talking about is the statute. And the statute says the Secretary has the burden of proving a serious harm. Now, the regulation can't trump the statute. And the case law says that the Secretary has the burden of proving that significant exposure. One of the things I noted, too, and... Well, you're saying your problem with that is the presumption. You're saying by applying the presumption, the Secretary has flipped the burden to you to rebut the presumption. That's correct, Your Honor. And that's why the burden of proof has not been met here. That's correct. And that's one of the points the Administrative Law Judge made in his footnote, as well, is that the presumption in the standard, in effect, switches the burden of proof. You see, we had in the stipulations facts that we thought were reasonable grounds for us to believe that there was no asbestos there. And the Secretary's position is that because of the presumption in the standard, it doesn't make any difference. There are no facts upon which you can rely to believe that there might not be asbestos, unless you have done the testing. That's really the only thing you can do, so that you have to affirmatively prove there's no asbestos. Well, if no... You're not suggesting... If no asbestos is found, if you do the testing... No, if no asbestos had been found, but testing had not been done, that would be a violation, wouldn't it? Not a serious violation. Because there's no proof that there could be a serious injury. And the statute requires that, Your Honor. But there's a... But are you saying that there's a requirement? Are you saying there's a requirement that actual injury be shown? No. I'm saying that there's a requirement under the statute that there be proof that the condition, which is asbestos, is such that there's a substantial probability, the language of the statute, substantial probability of serious injury or death. The language of the statute is what controls here, not the statute of the regulation. Another interesting thing to me is that in their brief, the Secretary of Labor has asked for the court to reinstate the penalties. There was no evidence before the administrative law judge as to penalties. And again, we're talking about... Well, that's because your motion to strike the OSHA 1B was granted. That's right, Your Honor. And there was no other evidence. I'm not aware of any case decision where we've ever had exactly this situation, but what we have here is the law is what we used to call hornbook law, and that is you cannot have a serious violation without a penalty. The statute requires a penalty for a serious violation, but you can't have a penalty without evidence as to the four statutory factors, which are size, history, good faith, and gravity. So we have a situation here where there is no evidence to support a penalty, so if you wanted to backdoor it, you could say there's really been no evidence. Well, if we were to find that there was a serious violation here, two serious violations... You would argue, and I think you'd have a strong argument, that we would have to remand for the Secretary, for the ALJ to consider whether the statutory penalty factors, wouldn't we? I don't think you can do that, Your Honor, because this was submitted on stipulated facts. And the rules are very clear that when it's submitted on stipulated facts, that's the record. You can't go back and take more evidence. Well, what if we found that the motion to strike the OSHA 1B was improvidently granted? Well, I hope you don't do that, Your Honor, but I'm not sure that's before the court. Well, I think most of what we've been arguing today was not in so many words before the court. I don't recall that it was raised either in the petition for review or the review case. But the ALJ said not only was that struck, but in addition to that, there was absolutely no evidence to support the statutory penalties. Does the court have any additional questions? Well, if there is a serious violation, a penalty must be imposed, must it not? That's correct, and so then you would think the converse would be true, and that is if no penalty can be imposed, then there can't be a serious violation. We're not talking about a lot of money here. I know the maximum you could get would be $7,000. The government was looking for, the secretary was looking for $2,000 on each of the violations. I think the government would probably settle this out for $4.27 if they win, but I don't know. Your Honor, Trinity's view in the case was that they thought they'd acted with good faith. Yes, and that's part, wouldn't that be something for the ALJ on a remand? That's one of the considerations. Your Honor, I think when a case is submitted on stipulated facts, that is the record. Okay. I'm not sure, I may have missed this in the beginning, but did you answer whether the secretary has jurisdiction over your client in these circumstances? What we were talking about in the beginning with your adversary. They have jurisdiction, excuse me, they have jurisdiction over Trinity generally because It does matter, I should say. Well, you know, frankly, I'm not sure how to answer that question. Our thought was they have jurisdiction over Trinity as a general proposition because we're an employer and we engage in a business-affected interstate commerce. We don't think, though, that they have, if you want to call it jurisdiction, that they have jurisdiction to cite us for a violation that affects somebody else's employees. And that's why we raised that defense. So the fact that, in this case, the fact that you're an employer really is not relevant. You're really being cited because you're a building owner. That's correct. Right. So does the secretary have jurisdiction over building owners irrespective of whether they're an employer or not? I don't think so. But, again, from our standpoint, we thought the issue was subsumed in the argument that they can't cite us because we're not the employer of the affected employees. So you would still go back into summit and section 1910.12a. Well, that's one argument, Your Honor. There are several arguments that support the view you can only cite the employer of the affected employees. The Nationwide v. Darden case is another principle on which that is based. We think also that the legislative history of the Act is very clear, that you can only cite the employer of affected employees. The early case decisions of the Review Commission support that. There are a lot of arguments. We raised the Darden case because we thought that was the clearest argument. The Supreme Court changed the law and said you can't interpret these terms employer and employee broadly any longer in order to affect the person. So you're not suggesting that 1910.12a trumps any regulation that was to be enacted today because of the reading the summit has given it? I certainly understand that question. Well, the 1910 was an ambiguous. Before the court, someone said, what does him mean? And they found him means his employees, not the employees of someone else. Now, are you suggesting that the Secretary cannot enact other regulations? I'm not being articulate. Could I offer this? If you're asking could they change 1910.12a, amend that regulation to make it broader, I think the answer to that is yes. But as this court said in the Clean Ocean case, as long as that regulation is on the books, the Secretary of Labor is bound by it. And that regulation says the Secretary can only cite employers of affected employees. Because that regulation applies to the whole of Part 26. That's correct. We're going to hear a rebuttal, but we would like to have from the parties within 10 days, if that is doable, a brief letter memoranda on the question that we raised right out of the box. In other words, the jurisdiction of the Secretary over building owners and facility owners. Under the circumstances of this case. Rebuttal, please. You'll have simultaneous letter memoranda. I was busy crafting my answer to the building owner question. But now I'll save it for a supplemental briefing. You can give it to us quickly. But I think you probably want to get into this seriously. Yeah, I'd like to address the seriousness issue. Into the seriousness, yes. So, the issue the Secretary has raised on appeal is whether Trinity's violations were serious under Section 17K of the OSH Act. The ALJ erred in holding that Trinity's violations were not serious. And the proper classification of a violation is a pure issue of law over which this Court has plenary review. The ALJ erred by applying the wrong legal standard. And this Court should therefore reverse his decision and find that Trinity's violations were indeed serious. Section 17K states that a violation is serious if there is a substantial probability of death or serious physical harm. The Commission and several courts, including this court in Bethlehem Steel, have interpreted this language to mean that the Court should focus on the possibility that an employee will suffer a disease or injury that in turn may cause death or serious harm, and not the probability. Here, it's undisputed that the... Are you saying your position is that any possibility is sufficient? Any possibility. Wouldn't that make virtually every violation a serious violation? Because it's always possible? Possible that... I think the important distinction is to focus on the severity of the result, and not the likelihood of the result. Well, that's what I just said. Possibility. The possibility that an employee will suffer a disease or injury that may cause death or serious harm. Is that a metaphysical possibility? Andy, the remotest possibility? The Secretary's position is that if... If you're dealing with a... If there... If the resulting harm would be a disease, like asbestosis, mesothelioma, lung cancer, all the horrible asbestos-related disease, then if a violation creates any possibility that an employee could contract those diseases, then yes, that would be serious. That's a pretty broad interpretation, isn't it? Well, I mean, especially in the context of this case, where the violation was a failure to warn or a failure to test for the asbestos, the seriousness of the violation really comes from the fact that employees are not given the information they need to protect themselves or how to act. And so basically, they're being sent unknowingly into a worksite that, yeah, it's possible that there's no asbestos behind the wall that they've removed. It's also possible that the place is covered with asbestos. You're saying the risk is so great that even if there's only a metaphysical possibility that something bad might happen or that... That it's a serious violation. And I think there are a couple of important points to point out. The harm here is so great. That's part of what's driving this. I mean, the secretary has found that there's no substance more toxic than asbestos in the workplace. That was in one of the preamble findings. I'm not quoting it exactly. But she's also found that 75% of all buildings constructed before 1981 have asbestos. So we actually have a pretty easy requirement we can impose on building owners to just test. Test. If 75% of all buildings before 1981 have asbestos, then there's a pretty high likelihood that your building will. So if you test and find out that you don't have asbestos, then you can proceed with the certainty. So the good fake knowledge... Which of course is the argument that your friend across the aisle makes, that you're requiring them to prove a negative. It's your burden of proof, but you're making them prove a negative. Yeah, I mean, I think that if this is the presumption, like the argument that the standard is actually invalid on its face because it contains a legal presumption. I think that that really misunderstands what the designation of certain materials as presumed asbestos containing materials is a designation. It's a labeling of certain high-risk materials that was based on numerous findings in the rulemaking record. The secretary said these are highly toxic or likely to be highly toxic materials, and so you need to be careful. That's merely a designation. Had the secretary used the word designated asbestos-containing material, I don't think Trinity would be able to cause the type of confusion it's trying to cause here. We did not presume they had knowledge of the asbestos, because we didn't have to. The only knowledge requirement we had here was they had knowledge of the valid conditions. And that was the building was a pre-1981 building, but the brick wall that Trinity had employees remove contained thermal system insulation, which qualifies as PACM. And Trinity knew it did not apply with the testing duties under K-5. So we had proved all the knowledge elements that Secretary needs to prove. Your adversary brought up about exposure. Was there exposure here? There was exposure here. We just don't know how much. That's a really good point. The fact that the Trinity failed to test, that's the reason we don't have air samples or monitoring data. The type of data they're asking us to have or to prove seriousness, we can't get when they never identified the asbestos in the first place. Wasn't that identified subsequently? Yeah, it was identified subsequently. But at that point, by the time the compliance officer got on site, they had stopped the work. So the compliance officer was not able to. So the type and the amount of asbestos was identified. Presumably something is known about the period of exposure. And from those parameters, can you make some kind of determination of how serious the exposure was? Yeah, I think you can definitely make some conjectures about that. And I actually spoke with our enforcement people and asked them. Here they found 3-5% asbestos and the exposure could have been a day and a half. And they said that yes, it's possible that that could lead to overexposure, meaning exposures above the permissible exposure limit. So it's possible here. And one other thing I'd just like to point out is the asbestos standard has a short-term exposure limit of 30 minutes, which essentially means that an employee can suffer significant risk in just 30 minutes of exposure. But you, meanwhile, did not meet your burden of proof because the motion to strike had been granted and the ALJ found no other evidence. So we're talking now about what could have been and what should have been, but in fact there isn't much evidence on any of this. I'm going to ask that in your briefs you specifically deal with the point I raised earlier about why the phrase or term building owners who are statutory employers did not make it into the final rule. In the right text you mean? Yes. Okay. Thank you very much. Thank you very much. We will take the case under advisement. We'll hear argument in the United States of America versus Barbara Lessman.